UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL M. BITTER, | Case No. 13-cv-05022-WHO |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| WINDSOR SECURITIES, LLC, | Re: Dkt. No. 15 |
| Defendant. | |

Seven months ago, defendant Windsor Securities, LLC, sent plaintiff Carol Bitter a demand letter stating that it believed Bitter was involved in initiating a separate action to recover the death benefits from Bitter's late husband's life insurance policy, a claim that Bitter denies. First Amended Complaint ("FAC") ¶¶ 12, 19(b).  The letter included an unfiled arbitration demand.  Although Windsor has not demanded arbitration, Bitter filed this action for declaratory relief.  *Id.* ¶ 18.  The question I have to decide is whether there is a case or controversy that allows jurisdiction in federal court.  Because Windsor's letter indicates that there is a dispute between the parties sufficient to create a case or controversy, discretionary factors weigh in favor of exercising jurisdiction, and the amount-in-controversy requirement is met, Windsor's motion to dismiss the declaratory relief complaint is DENIED.

## BACKGROUND

John Bitter was insured under a life insurance policy with a $2 million death benefit provided by Pacific Life Insurance Company.  *Id.* ¶ 9; Mot. 2.  Gregory Barnes, the trustee of the John L. Bitter Irrevocable Life Insurance Trust, and Windsor executed an agreement entitled "Life Insurance Premium Financing Agreement Among Windsor Securities LLC[,] John L. Bitter Irrevocable Life Insurance Trust[,] And John L. Bitter, Jr."  FAC ¶ 7; Wood Decl. (Dkt. No. 17)

United States District Court
Northern District of California

United States District Court
Northern District of California

Ex. A (the "Financing Agreement"). Barnes, Windsor, and Bitter, the named beneficiary of the policy, executed other documents simultaneously, including a Security Agreement for Beneficiary Interest in Trust executed by Bitter and an Insured's Consent executed by John Bitter. FAC ¶ 8; Wood Decl. Exs. B, C.

After John Bitter died on December 23, 2012, both Barnes and Windsor claimed the benefit under the policy. FAC ¶ 10. Barnes brought a declaratory judgment action in state court against Windsor and Pacific, alleging that Windsor's claim is based on documents that were never authorized by John Bitter and were obtained by Windsor through fraud and coercion. Windsor later removed the action ("Bitter Trust Action") to this Court. *Barnes v. Windsor Sec., LLC*, No. 13-cv-01878 (N.D. Cal. April 24, 2013).

On March 29, 2013, Pacific filed a cross-complaint for interpleader in the Bitter Trust Action. Fiorentino Decl. (Dkt. No. 15-1) Ex. C. Paragraph 13 of the cross-complaint alleged that "[i]n January 2013, an attorney representative for the Estate of John L. Bitter, Jr. informed Pacific Life that a representative of the Trust intended to make a claim for the Death Benefit Proceeds due under the Policy." Barnes answered the cross-complaint on May 28, 2013, and admitted paragraph 13 without reservation. Fiorentino Decl. Ex. D ¶ 13.

On July 16, 2013, Windsor sent Bitter a letter captioned "Notice of Dispute & Demand for Arbitration," which included an unfiled demand for arbitration. FAC ¶ 12; Wood Decl. Exs. D, E. The letter purported to give Bitter notice of a "dispute" between Windsor and Bitter in her individual capacity and in her capacity as executor of John Bitter's estate. Wood Decl. Ex. D. The letter stated that Windsor was "ready to discuss resolving [the dispute] amicably," but would "not hesitate" to submit the dispute to arbitration if it was not resolved to Windsor's satisfaction within 30 days. *Id.* The unfiled arbitration demand repeated the allegations in paragraph 13 of the cross-complaint and also stated that, upon information and belief, Bitter "directed, authorized and consented to the [Bitter] Trustee's initiation of the Bitter Trust Action" in violation of the terms of the Security Agreement, the Insured's Consent, "and the subsequent designation of Windsor as beneficiary and owner of the Policy." Wood Decl. Ex. E ¶¶ 14, 16, 22-25, 27-30. It also asserted that Windsor had suffered damages as a result of Bitter's alleged conduct, and indicated that

2

1    Windsor would seek damages arising from Bitter's alleged breach, attorney's fees, costs, and

2    expenses incurred by Windsor related to the Bitter Trust Action and Windsor's action against

3    Bitter. *Id.* at 9 & ¶¶ 26, 31.

4        Bitter's counsel[1] responded to the letter the next day, stating that "[s]o far as we are aware,

5    Ms. Bitter was not involved in any way in the initiation of the Bitter Trust Action," and that "such

6    involvement on her part [would not] have been authorized under the terms of the [Bitter] Trust."

7    Wood Decl. Ex. G ¶¶ 2-6.  Bitter also requested that Windsor drop its claims and compensate her

8    for attorney's fees she incurred responding to the letter.  *Id.*

9        On August 14, 2013, Barnes requested an order allowing correction of his answer to the

10   cross-complaint in the Bitter Trust Action, which I granted on August 20, 2013.  *Barnes*, Dkt. No.

11   54.  Barnes's answer now denies that an attorney representing John Bitter's estate contacted

12   Pacific about making a claim for the benefit under the policy.  *See id.*  On August 15, 2013, I

13   denied Windsor's motions to dismiss and for judgment on the pleadings in the Bitter Trust Action.

14   *See Barnes v. Windsor Sec. LLC*, No. 13-cv-01878, 2013 WL 4426244 (N.D. Cal. Aug. 15, 2013).

15   The parties to the Bitter Trust Action have stipulated to a stay in favor of arbitration.  FAC ¶ 11;

16   Mot. 4; Opp'n 2.

17       After Windsor did not respond to Bitter's reply, Bitter's counsel sent Windsor a follow-up

18   email on August 30, 2013.  Wood Decl. Ex. H.  The email requested that Windsor either move

19   forward with its demand or execute a release of all claims and reimburse the attorney's fees Bitter

20   incurred in responding to the July 16, 2013, letter.  *Id.*  Windsor responded that it had not decided

21   how to proceed, but would "review."  Wood Decl. Ex. I.  Windsor never followed up, so Bitter

22   filed this action on October 28, 2013.  Dkt. No. 1.

23       On November 7, 2013, after Bitter filed the complaint, Windsor acknowledged Bitter's

24   assertion that she had no involvement in the Bitter Trust Action and stated to her counsel, "If this

25   is true, and we don't doubt you but as yet have no testimony and no documents on the subject of

26   who is directing [Barnes], then Windsor may have no claim vs her or the estate."  Wood Decl. Ex.

27

28   ───────────────
     [1] Bitter's counsel is also counsel for Barnes in the Bitter Trust Action.

K.  But Windsor also indicated that it planned to wait for discovery in the Bitter Trust Action before deciding how to proceed.  *Id.*  Bitter then requested that Windsor "execute a full release of all claims, known and unknown, against Ms. Bitter" and compensate her for fees and costs if Windsor determined that the letter had no factual basis after depositions were taken.  Wood Decl. Ex. L.  Windsor responded that its letter was based primarily on Barnes's initial admission in paragraph 13 of the cross-complaint.  Wood Decl. Ex. M.   Windsor reiterated that it had not decided how to proceed and planned to "see what the key witnesses [in the Bitter Trust Action] tell us."  *Id.*

Discovery for the Bitter Trust Action ended on December 23, 2013, and all testimony and submission of documentary evidence was completed on January 16, 2014.  Wood Decl. ¶ 19.  To date, Windsor has not submitted a demand for arbitration or brought a claim against Bitter.  FAC ¶ 18.

Bitter filed the FAC on January 6, 2014.  *Id.* at 8.  She seeks a judicial declaration:  (i) of her rights and obligations under the agreements with Windsor; (ii) that she has not breached any obligation to Windsor; and (iii) that she has not caused Windsor any monetary damages and is not liable to Windsor for any damages.  *Id.* at 6 & ¶ 20.  She also seeks attorney's fees and costs.  *Id.* at 6.  On January 24, 2014, Windsor moved to dismiss.  Dkt. No. 15.

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter jurisdiction of the court.  *Doe v. Hagee*, 473 F. Supp. 2d 989, 994 (N.D. Cal. 2007).  Issues of mootness and ripeness are properly challenged under Rule 12(b)(1).  *See Gemtel Corp. v. Cmty. Redevelopment Agency of the City of L.A.*, 23 F.3d 1542, 1544 n.1 (9th Cir. 1994).  The plaintiff bears the burden of establishing the propriety of the court's jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A Rule 12(b)(1) motion will be granted if the complaint, when considered in its entirety, fails to allege on its face facts sufficient to establish subject matter jurisdiction.  *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  A defendant may seek dismissal by presenting evidence to refute the jurisdictional facts alleged in the complaint.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039

4

1  (9th Cir. 2004).  Once the defendant has introduced such evidence, the plaintiff must furnish

2  affidavits or other evidence necessary to satisfy its burden of establishing subject matter

3  jurisdiction.  *Hagee*, 473 F. Supp. 2d at 994.

### DISCUSSION

5  Windsor's motion raises two issues:  (i) whether I have subject matter jurisdiction under

6  the Declaratory Judgment Act, 28 U.S.C. § 2201(a), and (ii) whether Bitter has satisfied the

7  requirement that in all actions based on diversity of citizenship the amount "in controversy

8  exceeds the sum or value of $75,000."  28 U.S.C. § 1332(a).

### I.   THE DECLARATORY JUDGMENT ACT

10  The Declaratory Judgment Act states, "In a case of actual controversy within its

11  jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations

12  of any interested party seeking such declaration."  28 U.S.C. § 2201.  A court must first ask

13  whether there is a case or controversy and, if there is, "the court must decide whether to exercise

14  its jurisdiction by analyzing the factors set out" in *Brillhart v. Excess Insurance Co. of America*,

15  316 U.S. 491 (1942), and its progeny, *American States Insurance Co. v. Kearns*, 15 F.3d 142, 143

16  (9th Cir. 1994).  *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005).

17  An action must be ripe for review for there to be a "case or controversy" such that the court

18  has subject matter jurisdiction.  *See id.*  "[T]he appropriate standard for determining ripeness of

19  private party contract disputes is the traditional ripeness standard, namely, whether 'there is a

20  substantial controversy, between parties having adverse legal interests, of sufficient immediacy

21  and reality to warrant the issuance of a declaratory judgment.'"  *Id.* at 671 (quoting *Md. Cas. Co.

22  v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  The "basic rationale of the ripeness

23  requirement is to prevent the courts, through avoidance of premature adjudication, from entangling

24  themselves in abstract disagreements."  *Oklevueha Native Am. Church of Haw., Inc. v. Holder*,

25  676 F.3d 829, 835 (9th Cir. 2012) (citation and internal quotation marks omitted).  "Courts

26  conduct a factual inquiry into the totality of the circumstances to determine if an actual case or

27  controversy existed at the time the declaratory judgment action was filed."  *Fid. Nat'l Fin., Inc. v.

28  Ousley*, No. 06-cv-1251, 2006 WL 2053498, at *4 (N.D. Cal. July 21, 2006).  The controversy

United States District Court
Northern District of California

5

1    must continue to exist after the action is filed.  *Golden v. Zwickler*, 394 U.S. 103, 108 (1969).

2           Even if a case is constitutionally ripe, the Declaratory Judgment Act still requires a court to

3    decide whether or not to exercise jurisdiction.  *Principal Life Ins.*, 394 F.3d at 672.  The *Brillhart*

4    factors that must be applied are non-exclusive and state that a "district court should avoid needless

5    determination of state law issues; it should discourage litigants from filing declaratory actions as a

6    means of forum shopping; and it should avoid duplicative litigation."  *Gov't Emps. Ins. Co. v.*

7    *Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc); *Principal Life Ins.*, 394 F.3d at 672 (quoting

8    *Dizol*, 133 F.3d at 1225).  The court may also consider:

9
10           whether the declaratory action will settle all aspects of the controversy; whether the
             declaratory action will serve a useful purpose in clarifying the legal relations at issue;
11           whether the declaratory action is being sought merely for the purposes of procedural
             fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action
12           will result in entanglement between the federal and state court systems. . . . the
             convenience of the parties[;] and the availability and relative convenience of other
13           remedies.

14   *Dizol*, 133 F.3d at 1225 n.5 (quoting *Kearns*, 15 F.3d at 145 (Garth, J., concurring)).

15          There is a "substantial controversy" between Bitter and Windsor "of sufficient immediacy

16   and reality to warrant the issuance of a declaratory judgment."  *Principal Life Ins.*, 394 F.3d at

17   671.  Windsor's demand alleged that Bitter breached a contractual obligation she owed to

18   Windsor.  The demand described Bitter's conduct with specificity and articulated the basis for its

19   allegations.  The clear implication of the demand was that Windsor believed it had enough

20   evidence to take legal action against Bitter and would "not hesitate" to do so if the matter was not

21   resolved to Windsor's satisfaction within 30 days.  *See, e.g., Davison Design v. Riley*, No. 11-cv-

22   02970, 2011 WL 5573901, at *2 (N.D. Cal. Nov. 15, 2011) (holding that the defendant's letters

23   threatening litigation over alleged statutory violations "raise[d] a real case or controversy under

24   the Declaratory Judgment Act").

25          Windsor now argues that its demand letter did not create a case or controversy because it

26   was merely following the dispute resolution procedures in the Security and Financing Agreements

27   before taking any legal action.[2]  Initiation of the process creates a case or controversy because, by

28   _____
     [2] Section 7.11(b) of the Financing Agreement regulates disputes under the Security Agreement.

its terms, the dispute resolution provision applies to "all controversies or disputes arising out of or in connection with th[e] Agreement" and is intended to displace immediate filing of an action in court. By availing itself of this provision, Windsor recognizes that there is a "case or controversy" that it could have brought to court but for that provision.

Bitter's denials and Windsor's subsequent assertions that it was unsure whether it had enough evidence to proceed against Bitter do not negate the existence of a substantial controversy. Windsor sent the letter because it believed it had a basis to sue Bitter. The totality of the circumstances indicates that Bitter and Windsor still maintain "adverse positions" and that there is a very real possibility that Windsor will take legal action against Bitter in the future. *See Societe de Conditionnement en Aluminium v. Hunter Eng'g Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981). While Windsor stated that it needed more time to develop facts in the Bitter Trust Action to decide whether to proceed in this action, discovery in the Bitter Trust Action ended three months ago and Windsor has still not renounced any intention of pursuing this action. The need to develop facts does not mean that no case or controversy exists—that need is why discovery is allowed.

Windsor argues that Bitter's declaratory judgment action is unripe because it concerns uncertain or contingent future events that may not occur. *See* Mot. 7-8. More specifically, Windsor contends that Bitter cannot demonstrate any current harm because Windsor has not initiated any legal action against Bitter nor had the opportunity to determine "whether such legal action may lie at some later point in time." *See id.* at 7. Bitter, in contrast, asserts that an adversary's decision whether or when to sue cannot "comprise the sort of uncertain or contingent future event that would preclude a finding of ripeness." Opp'n 16.

Bitter is correct. Nearly all of the cases cited by Windsor to support its contention that this action is unripe involve either possible future conduct by the plaintiff or potential government action, and are irrelevant to a party's decision whether to bring suit for breach of contract. *See*

---

*See* FAC ¶ 15; Wood Decl. Ex C ¶ 20. That section provides that if there is a dispute, the parties must first discuss the dispute and attempt to resolve it amicably, "commencing upon one party giving other parties written notice of such Dispute." If the dispute is "not resolved within thirty (30) days after such notice," any party "may submit such Dispute to be finally settled by arbitration." *Id.*

1   *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010) ("Unless and

2   until *Plaintiff* sues the third-party tortfeasor and is unable to recover the amount he claims he is

3   owned [sic], Plaintiff cannot claim that Defendant has prevented him from recovering that

4   amount") (emphasis added); *Sellers v. Regents of Univ. of Cal.*, 432 F.2d 493, 500 (9th Cir. 1970)

5   (refusing to enjoin enforcement of statute and noting that "we can only speculate as to the type of

6   future activity in which [the plaintiffs] will engage in"); *Owner-Operator Independent Drivers*

7   *Assoc., Inc. v. State of Cal.*, No. 10-cv-02010, 2010 WL 4982956, at *1 (E.D. Cal. Dec. 2, 2010)

8   ("No one can yet anticipate how the [new, yet to be implemented state statute] will affect Plaintiffs

9   and/or their business."); *Portland Gen. Electr. Co. v. Myers*, No. 03-cv-1641, 2004 WL 1722215

10  (D. Or. July 24, 2004) ("Although any civil charges filed against [the plaintiff] will likely be

11  preempted by the FPA, the court cannot evaluate such a claim until the investigation [of the

12  plaintiff] is completed.").  A potential plaintiff's decision whether to sue for breach of contract is

13  not the type of "uncertain" or "contingent event" contemplated by the ripeness doctrine when the

14  event underlying the alleged breached has already occurred and the potential plaintiff has sent a

15  demand letter.  Here, the circumstances indicate a sufficient controversy between the parties that a

16  court may adjudicate.

17      Having found that there is an actual case or controversy, I must analyze the factors set out

18  in *Brillhart* and its progeny, including *Kearns*, in order to decide if jurisdiction is appropriate.

19  "[T]he district court must balance concerns of judicial administration, comity, and fairness to the

20  litigants."  *Principal Life Ins.*, 394 F.3d at 672 (citing *Kearns*, 15 F.3d at 144).

21      The first *Brillhart* factor concerns whether state court is the preferable forum to decide

22  questions of state law.  *See Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 804 (9th Cir.

23  2002).  A "needless decision of state law" may involve:  an ongoing parallel state proceeding

24  regarding the "precise state law issue," an area of law Congress expressly left to the states, or a

25  lawsuit with no compelling federal interest (for instance, when a case is solely based on diversity).

26  *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371-72 (9th Cir. 2001), *overruled in part on*

27  *other grounds by Dizol*, 133 F.3d at 1223. "The primary instance in which a district court should

28  exercise its discretion to dismiss a case is presented when there exists a parallel proceeding in state

United States District Court
Northern District of California

1    court." *Md. Cas. Co. v. Knight*, 96 F.3d 1284, 1288 (9th Cir. 1996).

2          Here, Bitter's declaratory relief claims will necessarily involve application of California

3    contract law, and the only reason Bitter is in federal court is on diversity grounds, suggesting that

4    the federal interest in this matter is not great. *Id.* at 1371. However, there is no parallel state court

5    proceeding and both the Bitter Trust Action and this case are before me, so concerns about comity,

6    economy, and federalism are somewhat lessened. This factor is neutral. *See Travelers Cas. Ins.*

7    *Co. of Am. v. Am. Home Realty Network, Inc.*, No. 13-cv-0360, 2013 WL 1808984, at *7 (N.D.

8    Cal. Apr. 29, 2013) (Conti, J.) (citing *Dizol*, 133 F.3d at 1226).

9          The second *Brillhart* factor aims to avoid the use of declaratory judgment actions as a

10   means of forum shopping. It is not implicated here because both parties consented to this venue

11   by contract. *See* Wood Decl. Ex. C § 7.11(b).

12         The third *Brillhart* factor is concerned with judicial economy and avoiding "the waste of

13   judicial resources inherent in duplicative litigation." *Am. Cas. Co. of Reading, Penn. v. Krieger*,

14   181 F.3d 1113, 1119 (9th Cir. 1999). "If there are parallel state court proceedings involving the

15   same issues and parties pending at the time the federal declaratory action is filed, there is a

16   presumption that the entire suit should be heard in state court." *Dizol*, 133 F.3d at 1225; *see also*

17   *Brillhart*, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal

18   court to proceed in a declaratory judgment suit where another suit is pending in a state court

19   presenting the same issues, not governed by federal law, between the same parties").

20         Proceeding with Bitter's declaratory relief action would not constitute a waste of judicial

21   resources. There is no parallel proceeding in state court. Although the Bitter Trust Action deals

22   with similar subject matter, this action will resolve whether Bitter breached the operative

23   agreements by initiating the Bitter Trust Action, but not the substantive merits of the Bitter Trust

24   Action. Accordingly, Bitter's declaratory relief action will not "risk inconsistency with

25   substantive issues" in the Bitter Trust Action. *See, e.g.*, *Century Sur. Co. v. Byal*, No. 10-cv-

26   03917, 2011 WL 2550832, at *3 (N.D. Cal. June 27, 2011) (Alsup, J.). Judicial economy is likely

27   enhanced by having the same judge be responsible for both matters.

28         The *Kearns* factors also do not weigh in favor of dismissing the action. This suit will

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1   likely resolve all of the issues between the parties.  There is no parallel action that presents risks of

2   entanglement between the federal and state court systems.  A judicial declaration would serve a

3   useful purpose in clarifying the legal relations at issue, namely, whether Bitter is liable to Windsor

4   for breach of contract under the operative agreements.  The parties consented to this venue by

5   contract, so this venue is not inconvenient for the parties.  Bitter does not seek relief solely for the

6   purposes of procedural fencing or to obtain a "res judicata" advantage.  Windsor brought this

7   action upon itself by sending the demand letter and draft notice of arbitration, and not

8   unequivocally retracting it.  Discovery ended over three months ago.  Windsor should have all the

9   evidence it said it needed, so there is no fear of "procedural fencing" before Windsor was afforded

10   the opportunity to gather information.  Windsor cannot threaten Bitter with a lawsuit, argue that it

11   needs more time to develop evidence, refuse to say whether or not the dispute is resolved, and then

12   avoid declaratory relief.

13   **II.  AMOUNT IN CONTROVERSY**

14           Windsor argues that I lack subject matter jurisdiction because the FAC does not satisfy 28

15   U.S.C. section 1332(a)'s amount-in-controversy requirement.  Reply (Dkt. No. 18) 5-6.  Bitter

16   contends that this requirement is satisfied because she alleged in the FAC that the amount in

17   controversy exceeds $75,000 and because Windsor's damages in the Bitter Trust Action, for

18   which Bitter may be liable, already exceed $75,000.  Opp'n 19-20; FAC ¶¶ 3, 13.

19           In diversity actions, the amount in controversy must exceed "the sum or value of $75,000,

20   exclusive of interest and costs."  28 U.S.C. § 1332(a).  "The amount in controversy is normally

21   determined from the face of the pleadings."  *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802

22   F.2d 362, 363 (9th Cir. 1986).  A case must be dismissed "if, from the face of the pleadings, it is

23   apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed."  *St. Paul*

24   *Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

25           In actions seeking declaratory relief, the amount in controversy is measured by the value of

26   the object of the litigation.  *See Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 347

27   (1977).  Where, for example, the plaintiff claims that it is entitled to a certain amount and the

28   defendant claims that it owes nothing at all, the amount in controversy is the amount the defendant

United States District Court
Northern District of California

1   contends it should not have to pay.  *See generally Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348,

2   354 (1961).

3         Attorney's fees are part of the amount in controversy if authorized by statute or contract.

4   *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).  "State law governs whether there

5   should be an award of attorneys' fees in diversity actions."  *Hancock Lab., Inc. v. Admiral Ins.*

6   *Co.*, 777 F.2d 520, 525 (9th Cir. 1985).  California law provides that:

> [i]n any action on a contract, where the contract specifically
> provides that attorney's fees and costs, which are incurred to enforce
> that contract, shall be awarded either to one of the parties or to the
> prevailing party, then the party who is determined to be the party
> prevailing on the contract, whether he or she is the party specified in
> the contract or not, shall be entitled to reasonable attorney's fees in
> addition to other costs.

11   CAL. CIV. CODE § 1717(a).  Thus, section 1717(a) "establishes that Plaintiff may recover

12   attorneys' fees if:  (1) the indemnity agreement specifically provides for the award of attorney's

13   fees and costs, (2) Plaintiff is the prevailing party, and (3) the attorneys' fee request is reasonable."

14   *Int'l Fid. Ins. Co. v. Draeger Const., Inc.*, No. 10-cv-04398-LHK, 2012 WL 424994, at *4 (N.D.

15   Cal. Feb. 8, 2012) (Koh, J.) (citation and internal punctuation omitted).

16         Bitter argues that Windsor's attorney's fees in the Bitter Trust Action and potential

17   damages in Bitter Trust Action are properly considered in determining whether the amount in

18   controversy requirement is met.  *See* Opp'n 23-24.  On the other hand, Windsor argues only that

19   there is no ripe dispute between the parties, so Bitter's claims regarding the amount in controversy

20   are conclusory, indirect, and speculative.  Reply 5-6.

21         There are two objects of litigation in this action:  (i) recovery of the amount of Windsor's

22   attorney's fees in the Bitter Trust Action, and (ii) holding Bitter liable for breach of contract in the

23   event Barnes prevails in the Bitter Trust Action.

24         The operative agreements entitle the prevailing party in the Bitter Trust Action to

25   attorney's fees.[3]  Section 7.01 of the Financing Agreement provides that "any party that is in

26   default in the performance or observance of its duties and obligations hereunder shall indemnify

27   _____

28   [3] California law governs both the Financing and Security Agreements.  Fiorentino Decl. Ex. A at
     § 7.12; Ex. B at ¶ 18.

11

1    the other party hereto for the reasonable costs and expenses, including, without limitation, fees and

2    disbursements of counsel . . . incurred by such other party in enforcing this Agreement against

3    such defaulting party."  Section 14(b) of the Security Agreement requires that Bitter reimburse

4    Windsor for "expenses, including, without limitation, reasonable counsel fees, incurred by

5    [Windsor] in connection with the . . . . enforcement" of the Security Agreement.  Accordingly,

6    Windsor is entitled to attorney's fees incurred in enforcing the agreements.  *See, e.g.*, *Int'l Fid.*

7    *Ins. Co.*, 2012 WL 424994, at *5 (construing a similar contractual provision and holding that the

8    plaintiff was "entitled to attorneys' fees incurred in enforcing the contract").  Thus, Windsor's

9    attorney's fees in the Bitter Trust Action are relevant to determining the amount in controversy in

10   this case.  *See, e.g.*, *Liberty Mut. Fire Ins. Co. v. Beach*, No. 12-cv-00263, 2012 WL 5386083, at

11   *2 (D. Idaho Nov. 1, 2012) ("it is not improper to include both the probable costs of defense and

12   indemnification of the underlying litigation when determining the amount in controversy").

13       Bitter's potential liability for breach of contract is properly considered in determining the

14   amount in controversy because "[w]here, as here, the lawsuit seeks a declaration of no liability, the

15   value of the relief sought is measured by the value of the liability that would follow if liability

16   were found to exist."  *Biotronik, Inc. v. Medtronic USA, Inc.*, 840 F. Supp. 2d 1251, 1257 (D. Or.

17   2012) (citing 14A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL

18   PRACTICE AND PROCEDURE § 3708 (2011) (additional citation omitted)); *see also Horton*, 367 U.S.

19   at 354.  Here, Bitter's "potential liability" is the amount Windsor stands to lose in the Bitter Trust

20   Action—$1,200,000—because if Barnes prevails, Windsor could then sue Bitter for breach of

21   contract to recover that amount.  *See id.*  Windsor does not dispute this calculation.

22       Windsor relies on *Commercial Casualty Insurance Co. v. Fowles*, 154 F.2d 884 (9th Cir.

23   1946), to argue that Bitter's calculation of Windsor's damages is based on uncertain, future

24   contingencies.  Reply 6.  That case is inapposite.  In *Fowles*, the plaintiff admitted that the

25   amount-in-controversy requirement was not satisfied at the time the action was commenced, but

26   argued that he was entitled to additional "future benefits" that exceeded the jurisdictional

27   minimum.  *See id.* at 885-86.  The Ninth Circuit disregarded the future benefits because "no right

28   to such 'future benefits' existed at the time the action was commenced.  No one, at that time, knew

United States District Court
Northern District of California

12

or could have known whether such a right [to the future benefits] would ever exist." *Id.* at 886. In contrast, Bitter alleges that Windsor's damages already exceed $75,000, not that they will reach the jurisdictional amount at some point in the future. Although Windsor is correct that its total damages are yet to be determined because the Bitter Trust Action is ongoing, *Fowles* is not on point because Bitter alleged that the jurisdictional minimum was satisfied at "the time that [her] action was commenced." *See id.*

Bitter seeks a declaration that she is not liable for any damages incurred by Windsor as a result of the Bitter Trust Action. Absent this declaration, Bitter could incur both Windsor's attorney's fees in the Bitter Trust Action and the amount Windsor stands to lose in the Bitter Trust Action as a result of Bitter's alleged breach of the Security Agreement and the Insured's Consent. The object of the litigation is greater than $75,000 and Bitter has satisfied the amount-in-controversy requirement. I conclude "from the face of the pleadings" that there is no "legal certainty[ ] that the plaintiff cannot recover the amount claimed." *St. Paul Mercury Indem. Co.*, 303 U.S. at 289.

## CONCLUSION

Windsor's motion to dismiss is DENIED because its demand letter created an actual case or controversy, the *Brillhart* and *Kearns* favors do not weigh in favor of dismissing the action, and 28 U.S.C. section 1332(a)'s amount-in-controversy requirement is satisfied. Windsor shall answer the FAC within 20 days.

**IT IS SO ORDERED**.

Dated: April 11, 2014

_____
WILLIAM H. ORRICK
United States District Judge

United States District Court
Northern District of California

13